UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

ALTHEA JOHNSON,

                           Plaintiff,

      - v -                                       Civ. No. 6:03-CV-1510
                                                         (FJS/RFT)

MICHAEL J. ASTRUE, Commissioner of Social
Security,[1]

                           Defendant.
_____

**APPEARANCES:**                                 **OF COUNSEL:**

EMPIRE JUSTICE CENTER               LOUISE MARIE TARANTINO, ESQ.
Attorney for Plaintiff
119 Washington Avenue, 2nd Floor
Albany, New York 12210

HON. GLENN T. SUDDABY             WILLIAM H. PEASE, ESQ.
United States Attorney for the Northern District of NY      Assistant United States Attorney
Attorney for Defendant
P.O. Box 7198
100 South Clinton Street
Syracuse, New York 13261-7198

**RANDOLPH F. TREECE**
**UNITED STATES MAGISTRATE JUDGE**

## REPORT-RECOMMENDATION AND ORDER

In this action, Plaintiff Althea Johnson moves, pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), for a review of a decision by the Commissioner of Social Security denying her application for disability insurance benefits.[2] Based upon the following discussion, this Court recommends that the Commissioner's decision denying Social Security benefits be **affirmed**.

---

[1] Michael J. Astrue became Commissioner of Social Security on February 12, 2007. Pursuant to Federal Rule of Civil Procedure 25(d)(1), Michael J. Astrue is substituted as the Defendant in this suit.

[2] This case has proceeded in accordance with General Order 18, which sets forth the procedures to be followed when appealing a denial of Social Security Benefits. Both parties have filed Briefs, though oral argument was not heard. Dkt. Nos. 9 & 11. The matter was referred to the undersigned for Report-Recommendation pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(d).

## I. BACKGROUND

### A. Facts

Althea Johnson, born on April 21, 1975, was twenty-seven years old at the time she filed for disability benefits. Dkt. No. 6, Admin. Transcript [hereinafter "Tr."] at pp. 61-64. Plaintiff received her bachelor's degree in business administration from Siena College. *Id.* at p. 94. Plaintiff's past work experience includes being a helper in a bakery, a receptionist at a medical center, and a cashier at a pharmacy. *Id.* at p. 79.

On October 2, 2001, Plaintiff was picking doughnuts off of an assembly line in a bakery when she experienced a sudden "sharp pain" in her right hand. *Id*. at pp. 33 & 132. She continued working and the pain "moved" to her left hand. *Id.* Following the incident, Plaintiff allegedly sought treatment at a company facility, but continued working on light duty for approximately two weeks. *See id.* at p. 132. She then allegedly visited the emergency room due to pain in her hands and wrists. *See id.*[3]

On October 16, 2001, Plaintiff initially saw Sangbock Kim, M.D. Tr. at p. 137. Dr. Kim noted that both a nerve conduction study and an electromyography ("EMG") showed no nerve damage. *Id.* at p. 140. On December 19, 2001, Dr. Kim noted that Plaintiff should "rest at home" through January 9, 2002. *Id.* at p. 202. On May 15, 2002, Dr. Kim described Plaintiff's condition as a bilateral wrist strain and noted that Plaintiff showed "poor response" to hand therapy, medication, and a splint. *Id.* at pp. 137-38. He indicated that Plaintiff was able to lift and carry up to ten pounds, stand and/or walk up to six hours a day, sit up to eight hours a day, was limited in her abilities to push and/or pull using her upper extremities, and had limited manipulative abilities due to wrist pain. *Id.* at p. 139.

---

[3] Due to the fact that such medical records were not included in the administrative transcript, the Court obtained this information from medical notes wherein Plaintiff recited the history of her accident and any treatment sought therewith.

From December 12, 2001 to January 10, 2002, Plaintiff was treated by occupational therapist Rebecca Harrison, M.S. Tr. at pp. 127-36 & 203-04. She was diagnosed as suffering from tendonitis in both wrists and was prescribed therapy in the form of superficial heat, iontophoresis,[4] ultrasound, tendon glides, extensor stretches, nerve glides, pulleys, and massages. *Id.* at p. 204. She was also given wrist splints. *Id.* The progress notes reflect that Plaintiff reported decreased pain. *Id.* at pp. 130 & 204.

On December 31, 2001, Plaintiff began treatment with Peter Nassar, M.D. Tr. at pp. 155-57. Dr. Nassar opined that her hand pain and tenderness were due to repetitive use and possible diagnoses included tendonitis, neuropathy, or rheumatism. *Id*. at p. 155. He found that Plaintiff should remain on "medical restriction" from work until February 15, 2002. *Id.* at p. 156. On April 8, 2002, Dr. Nassar noted that Plaintiff's wrists were not swollen or warm and there were no sensory deficits, but found that Plaintiff was totally disabled. *Id.* at pp. 147 & 205. Similarly on May 13, 2002, Dr. Nassar noted that Plaintiff's wrists showed no erythema[5] or swelling. *Id.* at p. 145. He determined that the etiology of Plaintiff's condition was unclear and deferred all workers' compensation and disability claims to rheumatology and orthopaedics for evaluation of "suitable activity." *Id.*

On January 30, 2002, Plaintiff began treating with Richard L. Uhl, M.D., of The Orthopaedic Group. *Id*. at p. 144. Dr. Uhl diagnosed Plaintiff as suffering from tendinitis. *Id.* On May 13, 2002, Dr. Uhl noted that Plaintiff was "slightly better" because she was in therapy and not working. *Id.* at p. 143. He opined that she had a mild to moderate disability. *Id.* On October 28, 2002, Dr. Uhl noted

---

[4] Iontophoresis is the introduction of ions of soluble salts into the tissues of the body by means of an electric current. DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 917 (29th ed. 2000).

[5] Erythema is redness of the skin produced by congestion of the capillaries. DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 617 (29th ed. 2000).

that a nerve test showed normal results and a bone scan showed mild uptake at the pisotriquetral joint. *Id.* at pp. 188 & 189. He administered an injection into this joint, which he later noted on December 2, 2002, "really did not help at all." *Id.* at pp. 189 & 193. Dr. Uhl was unable to explain Plaintiff's pain and recommended that she see a physiatrist and a pain management physician. *Id.* at p. 193.

In an Employability Assessment Form, completed on January 31, 2003, Dr. Uhl found that Plaintiff had no limitations in her abilities to walk, stand, or sit. *Id*. at p. 196. However, Dr. Uhl indicated that Plaintiff was moderately limited in the ability to use stairs or perform other climbing activities and very limited in her abilities to lift, carry, push, pull, bend, and use her hands. *Id.* Plaintiff subsequently underwent a CAT scan of her right wrist, which showed no abnormalities in the pisotriquetral region. *Id.* at p. 188. Dr. Uhl again noted, on May 21, 2003, that he had "no explanation for her pain." *Id.* On July 29, 2003, Dr. Uhl completed another Employability Assessment Form and noted the same limitations found previously in January 2003. *Id.* at pp. 214-15.

On May 29, 2003, Plaintiff began treating with Alan Bloomberg, M.D., of Albany Multi-Medicine Group, who noted that Plaintiff reported receiving some benefit from wearing a splint on the right wrist and from receiving cortisone injections. *Id*. at p. 184. He diagnosed Plaintiff as suffering from carpal tunnel syndrome and bilateral wrist tendonitis and opined that she was totally disabled. *Id.* at pp. 183 & 185. On June 30, 2003, in a letter addressed "To Whom It May Concern," Dr. Bloomberg opined that Plaintiff was being treated for a "spinal condition" and noted that she visited a total of seventeen times. *Id.* at p. 211. On August 12, 2003, Dr. Bloomberg clarified in a letter to Plaintiff's then-counsel that Plaintiff was being treated for her wrists and not her spine. *Id.* at p. 212.

The record also contains a Physical Residual Functional Capacity Assessment completed by "D. Weingartner," a non-examining disability examiner, on May 31, 2002. *Id*. at pp. 173-80. It was

indicated that Plaintiff was able to lift and/or carry twenty pounds occasionally; lift and/or carry ten pounds frequently; stand and/or walk about six hours in an eight-hour workday; and sit about six hours in an eight-hour workday. *Id.* at p. 174. It was also noted that Plaintiff was limited in her ability to perform fingering or fine manipulation. *Id.* at p. 176.

### B. Procedural History

On April 30, 2002, Plaintiff filed an application for disability insurance benefits alleging a disability onset date of October 13, 2001. Tr. at pp. 61-63. The application was denied initially on June 4, 2002. *Id.* at pp. 43-46. Plaintiff requested a Hearing, which was held before Administrative Law Judge ("ALJ") J. Lawson Brown on July 1, 2003. *Id.* at pp. 29-41. On July 22, 2003, ALJ Brown found that Plaintiff was not under a disability. *Id.* at pp. 20-28. On October 29, 2003, the Appeals Council reviewed additional evidence submitted by Plaintiff[6] and concluded that there was no basis under the Regulations to grant Plaintiff's request for review, thus rendering the ALJ's decision the final determination of the Commissioner. *Id.* at pp. 3-6. Exhausting all her options for review through the Social Security Administration's tribunals, Plaintiff now brings this appeal.

### II. DISCUSSION

### A. Standard of Review

Under 42 U.S.C. §§ 405(g) and 1383(c)(3), the proper standard of review for this Court is not to employ a *de novo* review, but rather to discern whether substantial evidence supports the Commissioner's findings and that the correct legal standards have been applied. *See Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991); *Urtz v. Callahan*, 965 F. Supp. 324, 325-26 (N.D.N.Y. 1997) (citing, *inter alia*, *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987)). Succinctly defined, substantial

---

[6] Included in the new evidence submitted to the Council was the clarification letter from Dr. Bloomberg. Tr. at p. 211.

evidence is "more than a mere scintilla," it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consol. Edison Co. of New York v. N.L.R.B.*, 305 U.S. 197, 229 (1938).

The ALJ must set forth the crucial factors supporting the decision with sufficient specificity. *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984). Where the ALJ's findings are supported by substantial evidence, the court may not interject its interpretation of the administrative record. *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988); 42 U.S.C. § 405(g). Where the weight of the evidence, however, does not meet the requirement for substantial evidence or a reasonable basis for doubt exists as to whether correct legal principles were applied, the ALJ's decision may not be affirmed. *Johnson v. Bowen*, 817 F.2d at 986.

### B. Determination of Disability

To be considered disabled within the meaning of the Social Security Act, a plaintiff must establish an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). A disabling impairment is defined as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id*. at § 1382c(a)(3)(D). Furthermore, the claimant's physical or mental impairments must be of such severity

> that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

*Id*. at § 1382c(a)(3)(B).

In this regard, "work which exists in the national economy" means "work which exists in significant numbers either in the region where such individual lives or in several regions of the country." *Id*.

In determining whether a claimant is disabled, the Commissioner follows a five-step analysis set forth in the Social Security Administration Regulations. 20 C.F.R. § 404.1520. At Step One, the Commissioner "considers whether the claimant is currently engaged in gainful activity." *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); 20 C.F.R. § 404.1520(a)(4)(i). If the claimant is engaged in substantial gainful activity, he or she is not disabled and the inquiry ends. If the claimant is not engaged in substantial gainful activity, the Commissioner proceeds to Step Two and assesses whether the claimant suffers from a severe impairment that significantly limits his or her physical or mental ability to do basic work activities. 20 C.F.R. § 404.1520(a)(4)(ii). If the claimant suffers from a severe impairment, the Commissioner considers at Step Three whether such impairment(s) meets or equals an impairment listed in Appendix 1, in Part 404, Subpart P of the Regulations. *Id*. at § 404.1520(a)(4)(iii). The Commissioner makes this assessment without considering vocational factors such as age, education, and work experience. *Berry v. Schweiker*, 675 F.2d at 467. Where the claimant has such an impairment, the inquiry ceases as he or she is presumed to be disabled and unable to perform substantial gainful activity. *Id*. If the claimant's impairment(s) does not meet or equal the listed impairments, the Commissioner proceeds to Step Four and considers whether the claimant has the residual functional capacity ("RFC")[7] to perform his or her past relevant work despite the existence of severe impairments. 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant cannot perform his or her past

---

[7] "Residual functional capacity" is defined by the Regulations as follows: "Your impairment(s), and any related symptoms, such as pain, may cause physical and mental limitations that affect what you can do in a work setting. Your residual functional capacity is what you can still do despite your limitations." 20 C.F.R. § 404.1545(a).

work, then at Step Five, the Commissioner considers whether the claimant can perform any other work available in the national economy. *Berry v. Schweiker*, 675 F.2d at 467; 20 C.F.R. § 404.1520(a)(4)(v).

Initially, the burden of proof lies with the claimant to show that his or her impairment(s) prevents a return to previous employment (Steps One through Four). *Berry v. Schweiker*, 675 F.2d at 467. If the claimant meets that burden, the burden then shifts to the Commissioner at Step Five to establish, with specific reference to medical evidence, that the claimant's physical and/or mental impairment(s) are not of such severity as to prevent him or her from performing work that is available within the national economy. *Id.*; *see also White v. Sec'y of Health and Human Servs.*, 910 F.2d 64, 65 (2d Cir. 1990). In making this showing at Step Five, the claimant's RFC must be considered along with other vocational factors such as age, education, past work experience, and transferability of skills. 20 C.F.R. § 404.1520(a)(4)(v); *see also New York v. Sullivan*, 906 F.2d 910, 913 (2d Cir. 1990).

### C. ALJ Brown's Findings

Plaintiff was the only witness to testify at the Hearing. Tr. at pp. 29-41. In addition to such testimony, the ALJ had Plaintiff's medical records consisting of treatment reports and opinions from various treating physicians and other sources, including, 1) Sangbock Kim, M.D., Treating Physician; 2) Peter Nassar, M.D., Treating Physician, Internal Medicine Group, Albany Medical College; 3) Richard L. Uhl, M.D., Treating Physician, The Orthopaedic Group; 4) Alan Bloomberg, M.D., Albany Multi-Medicine Group; 5) Rebecca Harrison, M.S., Hand Rehabilitation Center, Albany Memorial Hospital; and 6) D. Weingartner, Non-Examining Disability Examiner, Physical RFC Assessment. *Id.* at pp. 120-215.

Using the five-step disability evaluation, ALJ Brown found that 1) Plaintiff had not engaged in any substantial gainful activity since October 13, 2001, the alleged onset disability date; 2) her

bilateral wrist impairment is a severe medically determinable impairment; 3) her severe impairment did not meet nor medically equal any of the impairments listed in Appendix 1, Subpart P of Social Security Regulations No. 4; and 4) she has the RFC to perform work that does not involve lifting or carrying more than ten pounds occasionally with a need to avoid highly repetitive wrist movements and therefore, can perform her past relevant work as a receptionist or cashier. Tr. at pp. 23-28. In light of the finding that Plaintiff retained the RFC to perform her past relevant work, the ALJ determined that Plaintiff was not disabled.

### D. Johnson's Contentions

In seeking federal judicial review of the Commissioner's decision denying her benefits, Johnson asks this Court to review the ALJ's Step Four determination that she is able to perform her past relevant work. In support of her attack of the ALJ's Step Four determination, Plaintiff asserts that (1) the ALJ did not accord proper weight to her treating physicians' opinions and therefore misapplied the Treating Physician's Rule; (2) the ALJ's assessment of her credibility was contrary to Social Security Regulations; and (3) the ALJ erred in determining her RFC and by finding that she can perform her past relevant work. As explained fully below, the Court finds that the ALJ applied the correct legal standards and substantial evidence supports his finding that Plaintiff is capable of performing her past relevant work and therefore is not disabled.

### *1. Treating Physician Rule*

Under the Regulations, a treating physician's opinion as to the nature and severity of a claimant's impairment is entitled to "controlling weight" when it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(d)(2); *see also Rosa v. Callahan*, 168 F.3d 72,

78-79 (2d Cir. 1999).[8] However, "[a] treating physician's statement that the claimant is disabled cannot itself be determinative." *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999); *see also* 20 C.F.R. § 404.1527(e)(1) (Commissioner provides the ultimate decision on disability). The treating physician doctrine recognizes that a claimant's treating sources, which in most cases are medical professionals, are more apt to "provide a detailed, longitudinal picture of [the patient's] medical impairment(s) and may bring a unique perspective to the medical findings" as opposed to an evaluation of a one-time, non-examining, non-treating physician. 20 C.F.R. § 404.1527(d)(2); *see Schisler v. Sullivan*, 3 F.3d 563, 568 (2d Cir. 1993).

In analyzing a treating physician's opinion, "the ALJ cannot arbitrarily substitute his own judgment for competent medical opinion." *McBrayer v. Sec'y of Health and Human Servs.*, 712 F.2d 795, 799 (2d Cir. 1983); *see also Balsamo v. Chater*, 142 F.3d 75, 80-81 (2d Cir. 1998). Furthermore, when weighing all medical opinions and assessing what weight to accord, "[t]he duration of a patient-physician relationship, the reasoning accompanying the opinion, the opinion's consistency with other evidence, and the physician's specialization or lack thereof" are considerations. *Schisler v. Sullivan*, 3 F.3d at 568; 20 C.F.R. § 404.1527(d)(1)-(6); *see also Schaal v. Apfel*, 134 F.3d 496 (2d Cir. 1998). In the event the ALJ does not give controlling weight to the treating physician, he must specifically state the reasons for doing so. 20 C.F.R. § 404.1527(d)(2).

Plaintiff first contends that the ALJ erred by failing to assign controlling weight to the opinions of her treating physicians, Drs. Kim, Nassar, Uhl, and Bloomberg. Dkt. No. 9, Pl.'s Br. at pp. 11-14. Plaintiff cites to various statements made by her treating physicians which suggest that Plaintiff was

---

[8] A "treating physician" is the claimant's "own physician, osteopath or psychologist (including outpatient clinic and health maintenance organization) who has provided the individual with medical treatment or evaluation, and who has or had an ongoing treatment and physician-patient relationship with the individual." *Jones v. Apfel*, 66 F. Supp. 2d 518, 524-25 (S.D.N.Y. 1999) (quoting *Schisler v. Bowen*, 851 F.2d 43, 46 (2d Cir. 1988)).

disabled to varying degrees and was unable to perform her current work. *Id.* at p. 14. The ALJ assigned "little weight" to these statements because the issue of disability is reserved for the Commissioner. Tr. at p. 26. Under the regulations, such statements are not entitled to special deference since they speak to the ultimate issue reserved to the Commissioner. *See* 20 C.F.R. § 404.1527(e)(1); *Snell v. Apfel*, 177 F.3d at 133. Specifically, "[a] statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled." 20 C.F.R. § 404.1527(e)(1). Therefore, the ALJ was not bound by these statements and he properly found that they were not entitled to special deference.

Plaintiff also contends that the ALJ "ignore[d]" Dr. Bloomberg's June 30, 2003 opinion. Pl.'s Br. at p. 14. The Court finds that the ALJ did not ignore Dr. Bloomberg's opinion; rather he discussed the opinion in some detail. Tr. at pp. 25 & 26. The ALJ then assigned less than "little weight" to the opinion and found that Dr. Bloomberg's credibility was "marred" because Dr. Bloomberg stated that Plaintiff was being treated for a "spinal condition" while his treatment notes reflect that Plaintiff was being treated for her wrists.[9] *Id.* However, Plaintiff asserts that the ALJ had an obligation to fully develop the record by "following up" with Dr. Bloomberg "to resolve any inconsistency." Pl.'s Br. at p. 14.

The relevant regulation provides as follows:

When the evidence we receive from your treating physician or psychologist or other medical source *is inadequate* for us to determine whether you are disabled, we will need additional information to reach a determination or a decision.
\*\*\*\*
We will seek additional evidence or clarification from your medical source when the report from your medical source contains *a conflict or ambiguity that must be resolved*,

---

[9] After the ALJ rendered his decision, Dr. Bloomberg clarified in a letter to Plaintiff's then-counsel, dated August 12, 2003, that Plaintiff received treatment for her wrists. Tr. at p. 212. The Appeals Council reviewed this letter but determined that it provided no basis for changing the ALJ's decision. *Id.* at pp. 3-6.

>the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques.

20 C.F.R. § 404.1512(e), (e)(1) (emphasis added).

While Dr. Bloomberg incorrectly stated that Plaintiff was being treated for a spinal condition, this does not constitute an "inadequacy" in the record warranting clarification from the ALJ. As noted by Dr. Bloomberg in his subsequent letter, his treatment note from May 29, 2003 ***clearly*** states that Plaintiff's diagnoses include carpal tunnel syndrome and bilateral wrist tendonitis and that she was being treated for those conditions. Tr. at pp. 184-85 & 211-12. Moreover, the June 30, 2003 Letter itself contained no "conflict or ambiguity" that needed to be resolved. Dr. Bloomberg simply stated the condition for which Plaintiff received treatment, albeit incorrectly, and the frequency of her visits. Tr. at p. 211.[10] Accordingly, the ALJ was under no duty to recontact Dr. Bloomberg and he committed no error in this regard.

## *2. Credibility*

Under 20 C.F.R. § 404.1529(a), a claimant's description of symptoms and subjective pain will be considered in determining a claim for disability to the extent in which "symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." A claimant's statements about the persistence, intensity, and limiting effects of these symptoms are evaluated in the context of all objective medical evidence, which includes medical signs and laboratory findings. *Id.* at § 404.1529(c). Once medically objective evidence is submitted, the ALJ must identify the severity of the pain and whether that pain will limit the claimant's ability to work. *Id.* "It is well settled that 'a claimant's subjective evidence of pain is entitled to great weight' where . . . it is supported by

---

[10] The Court notes that Plaintiff's then-counsel failed to point out, before the ALJ rendered his decision, that Dr. Bloomberg stated that Plaintiff was being treated for a spinal condition and only after the ALJ rendered his decision did counsel then contact Dr. Bloomberg for clarification. *See* Tr. at p. 212.

objective medical evidence." *Simmons v. United States R.R. Ret. Bd.*, 982 F.2d 49, 56 (2d Cir. 1992) (emphasis added) (quoting *Rivera v. Schweiker*, 717 F.2d 719, 725 (2d Cir. 1983)). However, in a case where subjective symptoms are identified, "the ALJ has discretion to evaluate the credibility of the claimant and to arrive at an independent judgment, in light of the medical findings and other evidence, regarding the true extent of the pain alleged." *Brandon v. Bowen*, 666 F. Supp. 604, 608 (S.D.N.Y. 1987). Where the ALJ resolves to reject subjective testimony with regards to pain and other symptoms, he or she "must do so explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief and whether his [or her] determination is supported by substantial evidence." *Id.* at 608 (citing, *inter alia*, *Valente v. Sec'y of Health and Human Servs.*, 733 F.2d 1037, 1045 (2d Cir. 1984)). In evaluating a claimant's complaints of pain, an ALJ must consider several factors set forth in the Regulations including:

> (i) [The claimant's] daily activities;
> (ii) The location, duration, frequency, and intensity of [claimant's] pain or other symptoms;
> (iii) Precipitating and aggravating factors;
> (iv) The type, dosage, effectiveness, and side effects of any medication [claimant] take[s] or ha[s] taken to alleviate [his or her] pain or other symptoms;
> (v) Treatment, other than medication, [claimant] receive[s] or ha[s] received for relief of [his or her] pain or other symptoms;
> (vi) Any measures [claimant] use[s] or ha[s] used to relieve [his or her] pain or other symptoms (e.g., lying flat on [his or her] back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and
> (vii) Other factors concerning [claimant's] functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. § 404.1529(c)(3).

In his decision, the ALJ found that Plaintiff's allegations as to the frequency and severity of her symptoms were "out of proportion to the medical evidence" and not fully credible. Tr. at pp. 25-26. In so finding, the ALJ reviewed the medical evidence and Plaintiff's testimony, and discussed the relevant factors set forth in the regulations, including the location and intensity of her pain or other

symptoms; any precipitating and aggravating factors; the type of medication taken; treatment, other than medication, received; and measures used to relieve pain. *Id.* at pp. 24-27. The ALJ also pointed out that while a bone scan of Plaintiff's hands showed evidence of inflammation, x-rays of Plaintiff's hands showed no bony abnormalities and an EMG and nerve conduction studies were within normal limits. *Id.* at pp. 24-25.

The ALJ also discussed various statements made by Plaintiff, which illustrate the inconsistent nature of some of her assertions. *Id*. at pp. 25-26. "One strong indication of the credibility of an individual's statements is their consistency, both internally and with other information in the case record." S.S.R. 96-7p, *Policy Interpretation Ruling Titles II and XVI: Evaluation of Symptoms in Disability Claims: Assessing The Credibility of an Individual's Statements*, 1996 WL 374186, at *5 (S.S.A. 1996). The ALJ pointed out that at the Hearing, Plaintiff stated that her sister, who lives with her, does all of the cleaning, laundry, and cooking and that her day consists only of attending therapy. Tr. at pp. 25 & 36-37. However, in a questionnaire Plaintiff submitted with her initial application, Plaintiff reported that her daily activities involved making breakfast for her son, helping him get ready for school, performing household chores, and cooking meals such as chicken, fish, and soup. *Id.* at pp. 25, 98 & 99. Moreover, Ms. Harrison, a treating occupational therapist, noted in December 2001 that Plaintiff was a single mother to a seven-year old son and she did "all [the] homemaking" and noted in January of 2002 that Plaintiff was the "sole maintainer" of her household and "continue[d] to use her hands for activities of daily living," and for food shopping. *Id.* at pp. 132 & 204. In addition, in the questionnaire, Plaintiff stated that she needed no "special help" or reminders to take care of her personal needs and grooming. *Id.* at p. 99. However, at the Hearing she stated that her sister helps her

brush her teeth, shower, and dress because she had difficulty taking care of these needs.[11] *Id.* at pp. 33 & 38.

Plaintiff argues that the ALJ impermissibly applied a "sit and squirm" test by noting his personal observations of Plaintiff while determining her credibility. Pl.'s Br. at p. 17. However, the regulations expressly provide that "observations by our employees and other persons" will be treated as evidence. 20 C.F.R. § 404.1529(c)(3). These regulations are interpreted in Social Security Ruling 96-7p, which provides that "[i]n instances where the individual attends an administrative proceeding conducted by the adjudicator, the adjudicator may also consider his or her own recorded observations of the individual as part of the overall evaluation of the credibility of the individual's statements." S.S.R. 96-7p, *Policy Interpretation Ruling Titles II and XVI: Evaluation of Symptoms in Disability Claims: Assessing The Credibility of an Individual's Statements*, 1996 WL 374186, at *5 (S.S.A. 1996). Moreover, the Second Circuit has held that while such observations "should be assigned only 'limited weight,' there is no *per se* legal error where the ALJ considers physical demeanor as one of several factors in considering disability." *Schaal v. Apfel*, 134 F.3d at 502; *see also Campagna v. Barnhart*, 2007 WL 1020743, at *9 (D. Conn. Apr. 3, 2007) (finding that in addition to considering other factors that reflected adversely on the plaintiff's credibility, the ALJ "permissibly noted that plaintiff's demeanor at the hearing was not consistent with plaintiff's own description of his condition"). In this case, the ALJ considered Plaintiff's physical demeanor during the Hearing, but considered numerous other factors as well in assessing her credibility, including the factors set forth in the regulations as well

---

[11] While Plaintiff argues that the ALJ misquoted a statement regarding who helped Plaintiff brush her teeth, the Court finds that even if the ALJ misquoted such testimony, it was not fatal. The credibility determination is supported by substantial evidence.

as Plaintiff's inconsistent statements. Therefore, the ALJ committed no error in this regard.[12]

Disability requires more than the inability to work without pain. *Dumas v. Schweiker*, 712 F.2d 1545, 1552 (2d Cir. 1983). Here, the ALJ has sufficiently referred to substantial evidence, which demonstrates that although pain and limitations may exist, Plaintiff's pain was not so severe as to be disabling. Thus, the ALJ correctly determined that Plaintiff's testimony of pain and limitations was not credible.

### *3. Residual Functional Capacity and Past Relevant Work*

"[I]n order to determine at step four whether a claimant is able to perform her past work, the ALJ must make a specific and substantial inquiry into the relevant physical and mental demands associated with the claimant's past work, and compare these demands to the claimant's residual capabilities." *Kerulo v. Apfel*, 1999 WL 813350, at *8 (S.D.N.Y. Oct. 7, 1999) (citations omitted); *see also* S.S.R. 82-61, 1982 WL 31387, *Titles II and XVI: Past Relevant Work–The Particular Job or the Occupation as Generally Performed* (S.S.A. 1982); S.S.R. 82-62, 1982 WL 31386, *Titles II and XVI: A Disability Claimant's Capacity to do Past Relevant Work, In General* (S.S.A. 1982). RFC is what a claimant is capable of doing despite his or her impairments. 20 C.F.R. § 404.1545(a). Once the demands of the claimant's past relevant work are ascertained, the ALJ must identify the claimant's ability to perform the specific work-related abilities on a function by function basis. S.S.R. 96-8p, 1996 WL 374184, at *1, *Policy Interpretation Ruling Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims* (S.S.A. 1996).

As noted previously, the ALJ found that Plaintiff retains the RFC to lift or carry up to ten

---

[12] To the extent that Plaintiff argues that the ALJ incorrectly noted that she picked up an object during the Hearing, Pl.'s Br. at p. 17, the Hearing testimony suggests that Plaintiff gripped or held an object during the Hearing. *See* Tr. at pp. 39-40.

pounds occasionally with a need to avoid highly repetitive wrist movements, but found no other functional limitations. Tr. at p. 26. The ALJ then determined that, in light of these limitations, Plaintiff could perform her past relevant work as a receptionist or cashier. *Id.* While Plaintiff contends that the RFC determination and finding that she could perform her past relevant work lack support from the record, the Court finds that the ALJ's findings are supported by substantial evidence.

In December 2001, Plaintiff's treating physician, Dr. Nassar, opined that Plaintiff suffered from hand pain and tenderness due to repetitive use. Tr. at p. 155. In May 2002, Dr. Kim, a treating physician, opined that Plaintiff could lift and carry up to ten pounds, stand and/or walk up to six hours a day, and sit up to eight hours a day. *Id.* at p. 139. A Physical RFC Assessment from a disability examiner, D. Weingartner, completed in the same month indicates that Plaintiff could lift and/or carry twenty pounds occasionally, lift and/or carry ten pounds frequently, stand and/or walk about six hours in an eight-hour workday, and sit about six hours in an eight-hour workday, and that Plaintiff had unlimited abilities to push and/or pull. *Id*. at p. 174. Subsequently, in January and July of 2003, Dr. Uhl, another treating physician, found that Plaintiff had no limitations in her abilities to walk, stand, or sit. *Id.* at pp. 196 & 214.

Significantly, nerve conduction studies and an EMG, performed in October 2002, revealed no nerve damage. *Id*. at p. 140. In the same month, a bone scan showed that Plaintiff's left wrist bone was normal and that her right wrist bone showed only "[m]ild uptake." *Id.* at pp. 188 & 190. In April 2003, a computed tomography ("CT") evaluation of the carpal bones of the right wrist was unremarkable. *Id.* at p. 191.

Moreover, treatment notes from Plaintiff's various treating physicians reflect that Plaintiff exhibited full range of motion in her hands and forearms; no swelling, warmth, or sensory deficits in

her wrists; symmetrical upper and lower reflexes; and Tinel and Phalen's signs were negative.[13]  Tr. at pp. 144, 147 & 155.  It was also noted that Plaintiff showed a grip strength of twenty pounds in both hands and 5/5 motor strength of the deltoids, biceps, triceps, wrist extensors, and wrist flexors. *Id.* at pp. 183 & 185.

After determining Plaintiff's RFC, the ALJ then identified the physical demands of Plaintiff's past relevant work as a receptionist and cashier from Plaintiff's own description in a Work History Report completed by Plaintiff. *Id.* at pp. 26-27.  Plaintiff stated that in her capacity as a receptionist, she would sit for approximately eight hours a day, answer phones, file, and do a "little" typing, but no lifting. *Id.* at p. 81.  Plaintiff also stated that in her capacity as a cashier, she would stand between six and eight hours a day and was not required to lift and carry. *Id.* at p. 82.  According to Social Security Ruling 82-62, "[t]he claimant is the primary source for vocational documentation, and statements by the claimant regarding past work are generally sufficient for determining skill level; exertional demands and nonexertional demands of such work."  S.S.R. 82-62, 1982 WL 31386, at *3 *Titles II and XVI: A Disability Claimant's Capacity to do Past Relevant Work, In General* (S.S.A. 1982).  The ALJ then concluded that her jobs as she described them were consistent with her RFC.  Tr. at p. 27.

The Court finds such assessment to be proper in light of the foregoing substantial evidence.  It is Plaintiff's burden at Step Four to show that she is unable to perform her past relevant work.  Since Plaintiff failed to meet her burden of proof, the ALJ properly found her not disabled.

### III. CONCLUSION

**WHEREFORE**, it is hereby

---

[13] Tinel's sign is a tingling sensation in the distal end of a limb when percussion is made over the site of a divided nerve.  It indicates a partial lesion or the beginning regeneration of the nerve.  DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 1644 (29th ed. 2000).  Phalen's maneuver is used for detection of carpal tunnel syndrome.  *Id.* at 1054.

**RECOMMENDED**, that the Commissioner's decision denying disability benefits be **AFFIRMED**; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten (10) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN (10) DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72, 6(a), & 6(e).

IT IS SO ORDERED

Dated: January 31, 2008
   Albany, New York

_____
RANDOLPH F. TREECE
United States Magistrate Judge